ROSSBERG, Appellant, *v.* MONTGOMERY WARD & CO.
et al., Respondents.

(No. 7,989.)

(Submitted January 29, 1940. Decided February 28, 1940.)

[99 Pac. (2d) 979.]

156

*Mr. E. J. Stromnes* and *Mr. R. J. Nelson,* for Appellant, submitted an original and a reply brief; *Mr. Stromnes* argued the cause orally.

158

*Mr. H. C. Hall* and *Mr. Edward C. Alexander*, for Respondents, submitted a brief; *Mr. Hall* argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

This is an appeal from a judgment based upon a verdict directed for the defendant Montgomery Ward & Company and a judgment based upon a nonsuit as to the other defendant, A. J. Hedensten, who was a store manager for his codefendant.

160

The defendant filed a motion to strike the bill of exceptions from the record before this court for the reason that plaintiff prematurely obtained additional time to prepare, serve and file her bill of exceptions. It appears that when the court sustained the defendant company's motion for a directed verdict, and before the verdict was actually signed by the foreman of the jury, and before judgment was actually entered, the plaintiff asked for sixty days in addition to the time allowed by law to prepare, serve and file her bill of exceptions, which request the court granted, the defendants interposing no objection whatever. We believe the request was not prematurely made. The court had already taken action on the motion directing a verdict and the matters of signing the verdict and entering judgment were mere formalities following such action of the court. Section 9390, Revised Codes, provides that the person desiring "to present on appeal the proceedings had at the trial, must, within fifteen days after the *entry of judgment* * * * or within such further time as the court or judge thereof may allow, not to exceed sixty days * * * prepare and file with the clerk of the court * * * a bill of exceptions." This limitation of time is for the purpose of avoiding delay in perfecting appeals. The statute does not provide that the additional time may be allowed by the court only after the entry of judgment. The granting of such additional time after a verdict has been directed by the court and before actual entry of judgment does not violate the purpose or letter of this statute in any manner; hence the motion to strike the bill of exceptions is denied.

The plaintiff alleged that she received personal injuries in a fall on the floor in the basement of defendant company's store, a foreign substance, claimed to be oil, having caused her to slip. She testified that as a customer of the defendant Montgomery Ward & Company she made some purchases in their store, and, while walking through the basement, stepped into a pool of oil on the floor, slipped and fell against a counter. She stated that after arising she walked to the south end of the store, and an employee of the defendant com-

pany, by the name of Johnson, came up to her and asked her what had happened, and that she told him "to look up there and you will see." When he had done so he exclaimed, "Oil" (accompanied with an oath), and called one of the clerks to bring a gunny sack and clean it up. She further stated from appearances a can had been setting a little ways from where the spot had accumulated.

Thereafter she was given a note from a store manager to call on a doctor for first aid, but stated that she was not going to a doctor as she did not know how badly hurt she was. Subsequently, using her words, "Quite a few days after the accident," she consulted a doctor who, after examination, directed her to use liniment for her shoulder and arm. She stated that about twenty days after the accident she went to see the defendant Hedensten who met her outside the store and told her that the oil was spilled on the floor by some men who were working in the basement, and that he had at all times instructed the clerks in the basement to see that the floors were kept clean and that there was no excuse and that it was negligence and carelessness on the part of the clerks in the basement, and further that it had been there long enough to have been cleaned up. She further testified that she then made the statement, "Don't put the fault on the clerks. They can't watch all of it," and he replied, "that is no excuse whatsoever. It was on there long enough to have been cleaned up." This colloquy appears not once but several times in her testimony where the manager endeavors to put the blame on the clerks for not having removed the oil and to assume for his employer responsibility for her injury, and where she protests that the fault was not the clerks', that they could not watch it all the time.

This testimony appears to be wholly incompatible with the subsequent claim of plaintiff and denial of liability of the defendants. It is elemental that admissions or declarations of the officers or agents of private corporations are not admissible unless they are made while acting within the scope of their authority as a part of the *res gestae* relating to the present

transactions. For still stronger reasons the statements of subordinate agents are not admissions on the part of the corporation, unless they constitute a part of the res gestae. (Jones on Evidence, 2d ed., par. 268.)

The statements claimed to have been made by defendant Hedensten, store manager, are not res gestae, having been made about three weeks after the accident; neither do they tend to prove negligence as to the defendant company, as they were not made by the agent while accompanying an act which he was authorized to do. They were, at most, mere exclamations or conclusions on the part of the agent, and not binding. (Worden v. Humeston Ry. Co., 72 Iowa, 201, 33 N. W. 629; Butler v. Manhattan Ry. Co., 143 N. Y. 417, 38 N. E. 454, 42 Am. St. Rep. 738, 26 L. R. A. 46; Omaha & R. V. Ry. Co. v. Chollette, 41 Neb. 578, 59 N. W 921.)

If we assume that the agent did say, long after the accident, that the pool of oil had been spilled by independent workmen, and that "it had been there long enough to have been cleaned up," yet we cannot say that this is any sufficient evidence to submit the question of negligence as to either defendant to the jury. The statement that it was there long enough to have been cleaned up is not equivalent to an admission that it was there long enough to impute negligence because it had not been cleaned up. If it was there for one minute, it was there long enough to have been cleaned up; but the question was whether it was there long enough so that not discovering it and cleaning it up constituted negligence. Absolutely no time is fixed as to when the oil was spilled, or how long it was on the floor prior to the accident. The function of the jury in such cases is to determine, once the length of time the oil had been on the floor is ascertained, whether or not the defendants had sufficient notice as to its existence and time to have removed it. Here there is nothing to submit to the jury on the question: How long was the oil on the floor? Or on the question, the oil having been on the floor a minute, hour, day or week, did that constitute sufficient time for defendants and sufficient notice to them as to impute negligence to them for failure to

remove the obstruction, under all surrounding circumstances? Suppose a traveler on a highway were to collide with an obstacle thereon, and later reported his collision to another person who had never before seen the obstacle, knew not how it had gotten on the highway and did not see the collision, and he were to exclaim, ''That obstacle has been there long enough to have been removed.'' By what process of reasoning or even guessing could a jury ascertain how long the obstacle had been on the highway? It is evident that such a statement, if actually made, would be without meaning as having no foundation to support it, and as not tending to show negligence.

The fact that defendants did not object to the introduction of the testimony of plaintiff concerning the alleged statements of defendant company's manager in no way binds them on the question of negligence. If immaterial testimony enters the record without objection, it does not ipso facto become material; if evidence without probative force enters the record without objection, it is not thereby quickened with life or endowed with force or virtue.

It is noteworthy that plaintiff attempts to prove the vital elements of her case by putting words in the mouths of the defendant company's employees, yet, though they were present at the trial, she did not call them as witnesses. She made frank and candid confessionalists out of them in her narration of their alleged statements made long after the accident, yet avoided putting them on the stand. Here the plaintiff failed to prove that defendants ever knew of the existence of the oil or foreign substance prior to the time she claims to have stepped into it. Not knowing when or by whom the substance was placed on the floor, how in the name of reason could the employees say that it was there long enough to have been removed or that it was there so long that the failure to remove it constituted negligence?

When statements of agents are admissible against the principal is succinctly and comprehensively set out in 22 C. J. 379: ''It is established that admissions made by an agent in a narrative statement of a past transaction cannot be received

in evidence against his principal. The reason for such exclusion is sometimes stated to be that statements of this character are not part of the *res gestae,* but a ground of exclusion quite as potent may be found in a consideration of the fact that it is no part of the agent's duty to prejudice his principal by narrative statements construing or otherwise affecting his principal's rights or liabilities, or to discuss the propriety of his conduct even in relation to the subject matter of the agency." Likewise, in 22 C. J. 386: "Admissions of an agent of a private corporation, when relevant to the issues, are competent against the corporation, provided, but not unless, they are within the scope of the powers of the declarant, were made in connection with the performance of his duties, and are statements of fact rather than mere expressions of opinion."

The minority opinion of dissent cites 22 C. J. 382, under note 55 (e), in support of the admissibility of the manager's statement for the purpose of showing knowledge of the defect. Aside from the fact that the statement fails to show knowledge, as heretofore pointed out, the citation is not applicable. In fact, the cases cited under the footnote referred to, do not contradict the rule announced in 22 C. J. 379, but in some instances cite and approve the rule. One of the cases cited is *Vandewater* v. *Town of Wappinger,* 69 App. Div. 325, 74 N. Y. Supp. 699, 701, which distinguishes the rule announced in the majority opinion from that in the dissent, in the following language: "The admissions and declarations of the officers of the town after the accident were competent for the purpose of showing that the town, through its officers, had had notice of the condition of the bridge * * * his declarations showing that his attention had been called to the condition of the bridge before the accident were properly admitted for the purpose of showing notice to the town, out of which its liability arises. * * * In *Whitaker* v. *Railroad Co.,* 51 N. Y. 295, it was held that in an action brought * * * to recover damages for a willful injury inflicted by a driver of defendant's carriage, the declarations of the driver were not competent evidence against the defendant unless it appeared affirmatively that they

were made at the time the injury was inflicted; while in *Furst v. Railroad Co.*, 72 N. Y. 542, where a witness was permitted to testify that the conductor of a car causing injury to the plaintiff's ward had said to him, after the accident, 'He told me he thinks the driver did not look, or the child would not be run over,' it was held that the conversation was improperly admitted as against the defendant. This is quite a different matter, however, from the declarations of the officials of the town that they had had their attention called to the condition of this bridge, and that they had condemned it, because it was necessary for the plaintiff to show notice to the town; and, if the town officers knew of the condition of the bridge, it was some evidence of negligence,—the fact that it had been allowed to remain without the necessary repairs. If the officers of the street railroads, in the cases above cited, had declared that the driver was negligent, the cases would be nearer an analogy, and a rule asserted by the courts would be controlling.''

It is only necessary to compare the facts in the above case, and the declarations of the town officers, with the facts in the case at bar, and the declarations of the manager made twenty days after the accident, to show how far apart the cases are. In the cited case a bridge was in defective condition. This condition was known to the declarants and they had condemned it after its condition was called to their attention. In the case at bar the oil had not been placed on the floor by the defendants as a floor dressing, but was the result of an accidental spilling by an independent contractor, so far as the record shows, and covered a small area. The declarant was never shown to have been at the scene of the accident, nor shown to have ever seen the oil, either before or after the accident. Hence the question of knowledge or notice of the defect, or presence of oil, is not answered by his declaration.

At the conclusion of plaintiff's evidence the court sustained a motion for nonsuit as to the defendant Hedensten and denied it as to the defendant Montgomery Ward & Company.

A witness for the defendants by the name of Gordon, who was employed by the defendant company in Great Falls at the

time of the accident, and who at the time of the trial was employed by that defendant in California, testified that he cleaned up the pool of gasoline which approximately was twenty-four inches in diameter, and that he was positive that it was gasoline and not oil; that a blow torch was sitting approximately twelve inches from the pool of gasoline; that one of two electricians of the Palmquist Electrical Company, who were working in the basement on a contract job, stated that the gasoline had been spilled while they were filling the blow torch. All conversations claimed by plaintiff to have taken place between herself and the witnesses Hedensten, Gordon and Johnson were denied by those witnesses.

During the introduction of rebuttal evidence the plaintiff testified that the following conversation took place between Johnson and Gordon, two employees of defendant company: "Mr. Johnson looked down and said, 'Oh, hell. How long has that oil been on there.' And Mr. Gordon said, 'I don't think it has been on there for more than half an hour and I intended to wipe it up, but I was so busy I forgot it.'" On motion of the defendants this was stricken as improper evidence on rebuttal. Plaintiff stated that this conversation took place after the accident, after she had left the scene thereof and had subsequently returned, and after Johnson had called a clerk to wipe up the oil. It was not shown that the clerk had seen the accident or knew of the presence of the oil. This alleged statement by Gordon was not *res gestae,* as it was not made during the progress of the event, or by a witness to it. It was not contemporaneous with the transaction but a mere narrative of a transaction wholly completed, and was inadmissible. In fact, it did not relate to the circumstances of the accident, but to the cause of his delay in wiping up the oil. If anything, it was colloquy between two employees. Had there been no accident, the same words would have been used by the clerk in explaining to his superior the reason why he had not wiped up the oil. The cause of the accident was the oil or foreign substance. Its presence on the floor was not questioned. If, as here, a declaration has its

force by itself as an abstract statement detached from any particular fact in question, depending for its effect upon the credit of the person making it, it is not admissible, but is a mere narrative wholly detached from the fact to be proved. (*Lund* v. *Inhabitants of Tyngsborough*, 9 Cush. (Mass.) 36; 22 C. J. 379.)

On the previous day, all of plaintiff's direct testimony relating to the removal of the spot of oil was as follows: ''Mr. Johnson approached the point where I was. He said, 'Well, what in the world have you done, Ross?' I said, 'Well, you just look up there and you will see.' And he took me by the arm and he said, 'Oil' (with an oath). And he called one of the clerks in the back of the store to come and bring a gunny sack and clean the oil.'' Later she reiterated this testimony as follows: ''He called one of the clerks in the back of the store to bring a gunny sack up and clean the oil, and a man came up with a gunny sack and cleaned it as he supposed he would have cleaned it. Mr. Johnson told me he had transferred him away from here, so I don't know the clerk at all. Mr. Johnson and I stood there while the man cleaned the oil with a gunny sack. He wiped it up the best he thought he could, but he didn't.'' Still later, after narrating other conversation between herself and Johnson, she testified as follows: ''Then he took my arm and walked up the aisle to where I fell, and I said, 'Look Mr. Johnson.' He looked down and he said, (with an oath), 'He hasn't cleaned it up yet.' And he said, 'Say, come back and clean this up before somebody else gets hurt.' A man then came back and cleaned it up again a second time.''

It is apparent that the plaintiff was endeavoring to supply a necessary element in her case by rebuttal. It is observed that she detailed verbatim the conversation alleged to have taken place at the time of the accident, in her case in chief, and made absolutely no mention of the statement of the witness Gordon that the oil had been there a half hour and he was too busy to clean it up and had forgotten it. The first day, in direct testimony, she referred to the witness as ''a man came back and cleaned it up.'' The second day, in rebuttal, she referred to the witness as ''Mr. Gordon,'' a number of times

in narrating the events. The court was clearly within its discretion in striking the testimony, on motion, as improper rebuttal, and also as flagrantly at variance with the story of the previous day.

Counsel for the plaintiff then asked to open the case in chief, which was objected to on the part of the defendants as the witness Gordon had been excused the previous day, by stipulation of counsel, and had returned to his home in California. The plaintiff interposed no objection to the ruling of the court refusing permission to reopen her case.

The defendant company thereupon moved for a directed verdict, chiefly on the grounds that there was no evidence in the record that defendant company or its employees had caused any oil or gasoline to be placed upon the floor; no evidence that defendant company had negligently engaged and retained defendant Hedensten in its employ after inviting plaintiff into its premises; no evidence that defendant company negligently failed to warn plaintiff concerning the pool of oil or negligently omitted to remove the oil after it had accumulated or after defendants knew, or in the exercise of reasonable care should have known, that any pool of oil or gasoline was upon the floor, or failed to make a reasonable or any inspection of its floor to ascertain if it was reasonably safe. After argument of defendants' motion for directed verdict, the plaintiff moved to dismiss the case without prejudice, and the court indicated that the motion came too late, and thereupon sustained the motion for directed verdict.

The appellant (plaintiff) assigns four specifications of error: First, that the court erred in granting the motion for nonsuit of the defendant Hedensten; second, that the court erred in granting the motion for directed verdict; third, the court erred in denying plaintiff's motion for a new trial; fourth, that the court erred in sustaining the defendants' objection to admission of evidence relating to disability rating. At the oral argument the appellant offered the proposed additional specification of error No. 5, reciting that the court erred in striking the testimony of the appellant on rebuttal relating to statements

made as a part of the *res gestae* by Gordon and Johnson heretofore set out.

The appellant contends that it is not clear that the court struck the evidence, but a reading of the transcript convinces us that the opposite is true. In fact, after the court struck the evidence the appellant moved to open up her case in chief in order that the stricken evidence could be properly offered, which motion the court denied inasmuch as the witness Gordon had with plaintiff's consent been excused and had returned to California the previous day.

This court has previously disapproved the practice of adding ▆▆▆ specifications of error after appellant's brief is filed. Here counsel by stipulation, approximately three months before the case was set for argument in this court, agreed that the motion to amend by adding a specification of error could be made at the time of argument. We believe that counsel has made scant showing entitling him to amend by adding to his specifications of error, but in view of his statement, and not as a precedent for allowance of additional specifications without adequate showing, we have decided to allow the amendment and consider it. We hold that the trial court committed no error in striking the testimony. The rulings of the trial court in such matters are not, as a rule, reversible for error. (Jones on Evidence, par. 811.) It was not the court's action in striking the evidence that prevented presentation of the evidence but its refusal to allow plaintiff to re-open, which is not here complained of.

From the evidence heretofore outlined and well-settled law, it ▆▆▆ is clear that the plaintiff, in order to prove negligence on the part of the defendants, must show that the defendants placed the oil or foreign substance on the floor, or had knowledge of it being there, or that it was on the floor such a length of time that the defendants should have known of its presence. (*McEnaney* v. *City of Butte*, 43 Mont. 526, 117 Pac. 893; *Phillips* v. *Butte Jockey Club & Fair Assn.*, 46 Mont. 338, 127 Pac. 1011, 42 L. R. A. (n. s.), 1076; *Sears, Roebuck & Co.* v. *Johnson*, (10 Cir.) 91 Fed. (2d) 332.) The plaintiff also recog-

nized the necessity of proving at least one of these premises by appropriately pleading them in her complaint.

It is clear from reading the record in this case that the plaintiff has failed to make out a prima facie case. She stated that the foreign substance was "gasoline, or oil, or whatever it was I slipped on" and apparently had no clear knowledge as to its composition. On the other hand, the defendants' witnesses testified positively that it was gasoline. Likewise the plaintiff failed to show that the matter, whether it was oil or gasoline, was placed there by the defendants, or that they had any notice whatever of its presence prior to the time she stepped on it, or that it had been on the floor for such a length of time that the defendants should have known of its presence. This lack of proof is fatal to her case. The defendants offered positive testimony that an inspection of the floor is made as a matter of course during the morning of each day, and that a constant lookout is kept throughout the day by all clerks in order that the floor may be kept free of foreign substance. This positive testimony stands uncontradicted.

In the case of *Montague* v. *Hanson*, 38 Mont. 376, 99 Pac. 1063, 1067, this court stated: "The owner is not an insurer of the safety of his customers. He is bound only to use reasonable care to keep his premises in such a condition that those invited there by him may not be unnecessarily exposed to danger." It is clear from the evidence that plaintiff failed to show that the defendants did not exercise all required precaution.

The plaintiff having failed to make out a prima facie case of negligence against defendants, it is unnecessary to consider the remaining specification of error, as it is clear that the court properly sustained the motion for nonsuit on the part of defendant Hedensten and properly directed a verdict in favor of the defendant Montgomery Ward & Company.

The judgments are affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE MORRIS concur.

MR. JUSTICE ANGSTMAN concurring in part and dissenting in part:

I concur in what is said in the foregoing opinion to the effect that the bill of exceptions and the additional assignment of error should be considered on the appeal. I disagree with that portion of the opinion which holds that there was not sufficient evidence to make out a prima facie case for the jury. In considering the propriety of the motion for nonsuit and directed verdict, it is our duty to view the evidence in the light most favorable to plaintiff, and to consider that as proven which the evidence tends to prove. These principles are elementary. I believe the case presented when so viewed was one for the jury.

The complaint alleged and the answer admitted that defendant Hedensten was the business manager of the Montgomery Ward & Company store at Great Falls, and that it was his duty ''to exercise reasonable inspection of the premises in and about which the defendant corporation conducts its business in the city of Great Falls to the end that the same were and would be at all times during business hours reasonably safe for the ingress, progress and egress of patrons.''

The plaintiff testified that Hedensten in referring to the oil on the floor stated, ''It was on there long enough to have been cleaned up.'' Certainly this was a declaration against interest and constituted some evidence tending to show that Hedensten knew of the presence of oil and should have known of the danger therefrom in time to have removed it or caused it to be removed before the plaintiff was injured. This evidence cannot be said to be lacking in probative value. A person does not ordinarily make such a statement unless he knows it to be a fact. It was the statement of an ultimate fact which is permissible when it relates to a matter so simple and usual as to constitute a part of the common stock of knowledge. (22 C. J. 530.) That it was made after the occurrence is immaterial. The rule is that ''A statement of an agent may also tend to establish circumstantially the existence of material facts or of a relevant mental state, although it was not made in the course of

transacting business for the principal and amounted to merely a narrative of past events.'' (22 C. J. 382.)

The declaration is admissible not as an admission of negligence, but as some evidence tending to show that defendants had knowledge of the presence of oil on the floor in time to cause it to be removed before the injury to plaintiff. Many cases are cited in the note in 22 C. J. 382, under note 55 (e), sustaining the admissibility of such declarations—some made before and some after the occurrence complained of—for the purpose of proving knowledge of the defect. Whether or not the statement was in fact made is not a question for us to say. That was a question for the jury. Also, if the declaration were not admissible it must still be considered under the circumstances here involved. It went in without objection.

While the cases are not in harmony on the effect of incompetent evidence received without objection, the weight of authority supports the view that it must be given the same consideration as if it were legally competent. The rule is stated in 23 C. J. 39, as follows: ''Parties have a right to try their case on evidence which is not of the quality or character required by law, and where such evidence is admitted without objection it is the right and duty of the court or jury to give it the same consideration as if it were legal evidence.'' To the same effect is 10 Ruling Case Law, 1008.

Was the declaration sufficient to show knowledge or notice as against the company? I think it was. In considering this question we must keep in mind that Mr. Hedensten was the man who was employed by the defendant company to have supervision over the premises involved and to inspect them and keep them reasonably safe for the patrons. A corporation can only acquire knowledge through its servants and agents. His knowledge was knowledge to the corporation and his statement was competent to show the corporation's knowledge of the presence of the oil a sufficient length of time before plaintiff's fall to have removed it. This is the holding of the court under very similar facts in the case of *Garnett* v. *S. S. Kresge Co.,*

Kansas City Court of Appeals, 85 S. W. (2d) 157. To the same effect is the case of *Wainwright* v. *Westborough Country Club*, St. Louis Court of Appeals, 45 S. W. (2d) 86; and to the same effect, under facts very similar to those here, is the case of *F. W. Woolworth Co.* v. *Saxton*, 39 Ohio App. 118, 177 N. E. 219. (See, also, cases cited under note 55 (e) in 22 C. J. 382.) The precise length of time that the oil was on the floor becomes unimportant in the face of the admission of Hedensten that it had been there long enough to have been cleaned up.

My associates in condemning the declaration of Hedensten rely on the case, among others, of *Butler* v. *Manhattan Ry. Co.*, 143 N. Y. 417, 38 N. E. 454, 456, 42 Am. St. Rep. 738, 26 L. R. A. 46, but there the statement complained of had nothing to do with notice or knowledge on the part of the company of any defect. It had nothing whatever to do with the cause of action involved. The statement was, ''He said I can go to hell. 'Shut up.' '' It is plain enough that the decision of the court in holding that declaration inadmissible was correct.

The case of *Omaha & Rep. Valley Ry. Co.* v. *Chollette*, 41 Neb. 578, 59 N. W. 921, is also relied upon but that case holds that the declarations there involved were admissible as a part of the *res gestae*. The case of *Worden* v. *Railway Co.*, 72 Iowa, 201, 33 N. W. 629, is also relied upon by my associates, but there the declaration held inadmissible was simply a conclusion that there was a defect. Here the defect—a substance either oil or gasoline on the floor—is conceded. The only issue left, and the purpose of the declaration of Hedensten was to show that the defendants knew or in the exercise of reasonable care should have known of the presence of oil in time to have removed it or warned patrons of its presence before the injury to plaintiff. I think it was admissible for that purpose and tends to prove the fact. It is my view, therefore, that the case should have gone to the jury as to both defendants.

I express no opinion as to whether the rebuttal evidence offered by plaintiff was properly stricken or whether the court properly refused to grant leave. to open the case in chief, as

174

without this evidence I think there was sufficient to take the case to the jury.

MR. JUSTICE ERICKSON:

I concur in the above opinion of MR. JUSTICE ANGSTMAN.