No. 12329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

IDA DEMAREE,

Plaintiff and Appellant,

-vs-

SAFEWAY STORES, INC.,
A Maryland Corporation,

Defendant and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

Sandall, Moses and Cavan, Billings, Montana
John J. Cavan argued, Billings, Montana

For Respondent:

Moulton, Bellingham, Longo and Mather, Billings,
Montana
B. E. Longo argued, Billings, Montana

Submitted: February 28, 1973

Decided: APR 2 - 1973

Filed: APR 2 - 1973

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is a personal injury action tried to a jury in the district court of Yellowstone County. Judgment was entered on a jury verdict in favor of defendant Safeway Stores, Incorporated. From the final judgment and from the court's denial of her motion for a new trial, plaintiff brings this appeal.

On May 5, 1966, at approximately 4:00 p.m., plaintiff Ida Demaree entered defendant Safeway store premises located at 2200 Grand Avenue, Billings, Montana, for the purpose of grocery shopping. Plaintiff alleges that while in the store she slipped and fell, injuring herself. Plaintiff introduced evidence that the injuries required hospitalization and caused pain and disability and she had undergone an operation in connection with those injuries in San Diego, California, in 1971. It was also shown that plaintiff had been involved in two subsequent automobile accidents in 1966 and 1969.

It is undisputed that there was water or moisture in some amount on the floor of the Safeway store in the area plaintiff alleges she fell, although there were no eyewitnesses to the fall. The testimony is in conflict concerning the origin of the moisture on the floor, but there was no direct evidence on this point and the exact cause was unknown.

Plaintiff testified: That as she walked down the aisle in front of the meat counter, pushing a grocery basket, she noticed in the aisle a cart loaded with boxes that resembled frozen chicken boxes; that as she approached a boy moved the cart and she slipped and fell in the approximate vicinity of the cart's former position; that the back of her dress and her hand got wet when she fell; and, that she saw a puddle of water on the floor but could not remember its size.

Mr. LeRoy Swartz, a meat cutter employed by Safeway, was behind the meat counter approximately fifteen feet away but did not hear or see the fall. He testified: He first noticed plaintiff

standing and leaning on the meat counter holding her ankle or foot; that plaintiff informed him there was some water on the floor and she had slipped and twisted her leg; that he came from behind the counter to help plaintiff and to clean up the water but when he reached the area at the front of the counter she was gone; that there was another customer in the immediate area who made no indication that anything unusual had happened; and, that he then wiped up the water. He described it as being clear water, sized between six by fifteen inches and a foot by a foot and a half, not spreading, and containing a dry tire track running through it, but with no other noticeable marks resembling a skid. He also testified that occasionally spillages occurred as a result of broken merchandise or wet produce left standing in shopping baskets by customers.

After she slipped and fell, plaintiff testified she stood up feeling hazy and her leg hurt; that she heard someone behind the meat counter say "There is water on the floor, I better get the mop and wipe it up." Then, "some gentleman came out from a little office place and helped me in and set me in a chair." She identified this person as Francis Coleman, the store manager, who she said asked her to write her name and address on a pad and then helped her to her car, which she drove home. She was later taken to the hospital emergency room by her husband.

Store manager Francis Coleman testified: That he was in his office working and plaintiff came in by herself and told him she had fallen and hurt herself; that he excused himself, went to check the floor in front of the meat counter and found that the water had been wiped up; that he had plaintiff fill out an accident report and asked if she wanted assistance in getting to her car. She declined assistance and went to her car unaided. Coleman further testified: That immediately after plaintiff's departure he talked to James Haney, the produce manager, and together they inspected all the cartons which had been wheeled through that area and found them all to be dry and burnable; that any wet cartons

were left in the garbage collection area rather than taken across in front of the meat counter to the incinerator, located on the other side of the store; that all store employees were admonished to keep a watch for any foreign matter on the floors and, as manager, he walked around the store approximately forty or fifty times a day making inspections; that he had been in the meat counter vicinity fifteen minutes to one-half hour before plaintiff complained of falling and saw no water on the floor. He stated that no frozen chicken boxes were ever taken from behind the meat counter and into the aisle. No accident report was produced at trial by defendant.

Plaintiff presents eight issues for review on appeal, all of which are related to jury instructions. The first issue concerns the trial court's giving defendant's offered instruction No. 2. The remaining seven issues concern the trial court's denial of plaintiff's offered instructions Nos. 6, 7, 8, 9, 10, 11 and 14.

Defendant's offered instruction No. 2, given as court's Instruction No. 6 and taken from Montana Jury Instruction Guide, Instruction No. 120.04, reads:

> "One who enters or goes upon the premises of another as a business visitor, at the express or implied invitation of the owner, and in connection with the business of the owner, is called in law an invitee.
>
> "The invitation to enter extends not only to all parts of the premises which the invitee or business visitor is expressly invited to use, but also to all parts of the premises where the invitee under the circumstances and conditions of his invitation should reasonably be expected to go.
>
> "The owner of a place of business who has extended an invitation, express or implied, owes to all invitees who come upon the premises the legal duty to exercise ordinary care under the circumstances to keep the premises in a condition reasonably safe for use by the invitee in every reasonable pursuit of any purpose included within the invitation.
>
> "If there is danger attending the invitee's use of the premises and such danger arises from conditions not readily apparent to the senses of the ordinary person, and if the owner has actual knowledge of such conditions, or if such conditions would have been known to an owner in the exercise of ordinary care under the circumstances, the law then imposes upon the owner the duty to give the invitee reasonable warning of such danger.

"But the responsibility of the owner of the premises is not absolute; it is not that of an insurer. The owner is not charged with knowledge of defects which reasonable inspection would not disclose; and the owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses. There is no duty to give the invitee notice of an obvious danger.

"However, in the absence of appearances that caution him, or would caution a reasonably prudent person under like circumstances, the invitee has a right to assume, and to act upon the assumption that the premises he is invited to enter are reasonably safe for the purpose for which the invitation is extended."

We find court's Instruction No. 6 to be a correct statement of the law as it relates to the duty owed by defendant to its invitees. Callahan v. Buttrey, 186 F.Supp. 715; Kerns v. F.W. Woolworth Co., 138 Mont. 249, 356 P.2d 127; Regedahl v. Safeway Stores, Inc., 149 Mont. 229, 425 P.2d 335.

Additionally, when Instruction No. 6 is read with plaintiff's offered instruction No. 12, which was given as court's Instruction No. 7, the law is more than fairly stated on behalf of plaintiff. Court's Instruction No. 7 reads:

"When a place of business such as a supermarket here involved, is open for business, one who enters it for the purpose of shopping does so at the implied, if not the express, invitation of the operator of the establishment, and is called the 'invitee'. Upon the operator of such business establishment, the law places the duty of exercising ordinary care so as not unnecessarily to expose the invitee to danger or accident, and, to that end, to keep in a reasonably safe condition the general business premises made available for the invitee's use, and which the latter is expressly or impliedly invited to use. You are further instructed that the Plaintiff, while in the store here involved, was an invitee of the Defendant, as above defined, and if you find from the preponderance of the evidence that while in said store the Plaintiff exercised reasonable care for her own safety, and if you further find from a preponderance of the evidence that the Defendant failed to exercise reasonable care to keep the floor, and particularly, the aisle in front of the meat counter, provided for the Plaintiff's use in the store, in a reasonably safe condition for the Plaintiff's use and that any such failure was a proximate case of the injuries, if any, sustained by Plaintiff, then you must find your verdict in favor of the Plaintiff and against the Defendant." (Emphasis supplied).

The emphasized reference to the meat counter is a gratuity to which plaintiff was not entitled. It attempts to create a special standard in that area while commenting on the evidence.

The seven instructions offered by plaintiff and refused by the court in all instances are to a degree repetitive and attempt to establish a higher degree of care and a presumption of active negligence and/or strict liability, or a duty similar to the doctrine of res ipsa loquitur on the operators of supermarkets, as opposed to the duty of care for all other commercial establishments and their licensees as set forth above.

Plaintiff's proposed instruction No. 6 concerned a failure of defendant to make reasonable inspection of the floor, <u>particularly in front of the meat counter,</u> as constituting negligence.

In light of the cross-examination conducted at trial by plaintiff's counsel concerning defendant's not using "broom or sweeping charts" and failure to establish the use of such charts as an ordinary standard of care among retail storekeepers and in light of the evidence in this case, plaintiff's offered instruction No. 6 was not a correct statement of the law and amounts to a comment on the evidence, and as such cannot be permitted. Bjorndal v. Lane, 157 Mont. 543, 487 P.2d 527.

Plaintiff's proposed instruction No. 7 stated that the nature of the public use of defendant's property created a duty of immediate action. Plaintiff's proposed instruction No. 8 stated that knowledge by the defendant of the existence of a hazardous condition could be proven circumstantially. Plaintiff's proposed instructions No. 9 and No. 10 were practically identical statements that the law imposes liability without regard to notice or time to correct when a hazardous condition results from conduct by defendant's agents or employees. These proposed instructions Nos. 7,8,9 and 10 have essentially the same defects, as applied to the factual determinations required to be made by the jury in the instant case. They contain assumptions of factual determinations which were reasonably in dispute under the evidence presented at trial.

Any instruction which assumes as fact a matter legitimately in controversy, as shown by the evidence, is erroneous. Berne v. Stevens, 67 Mont. 254, 215 P. 803.

Finally, the proposed instructions were misleading as to the standard of care imposed by law upon storekeepers toward business invitees and as to the elements of negligence and proximate cause which must be established in order to find liability. In Rossberg v. Montgomery Ward & Co., 110 Mont. 154, 169, 99 P. 2d 979, this Court stated:

> "From the clear evidence heretofore outlined and well-settled law, it is clear that the plaintiff, in order to prove negligence on the part of the defendants, must show that the defendants placed the oil or foreign substance on the floor, or had knowledge of its being there, or that it was on the floor such a length of time that defendants should have known of its presence. * * *

> "* * * Likewise the plaintiff failed to show that the matter, whether it was oil or gasoline, was placed there by the defendants, or that they had any notice whatever of its presence prior to the time she stepped on it, or that it had been on the floor for such a length of time that defendants should have known of its presence. This lack of proof is fatal to her case. The defendants offered positive testimony that an inspection of the floor is made as a matter of course during the morning of each day, and that a constant lookout is kept throughout the day by all clerks in order that the floor may be kept free of foreign substance. This positive testimony stands uncontradicted.

> "In the case of Montague v. Hanson, 38 Mont. 376, 99 Pac. 1063, 1067, this court stated: 'The owner is not an insurer of the safety of his customers. He is bound only to use reasonable care to keep his premises in such a condition that those invited there by him may not be unnecessarily exposed to danger.' It is clear from the evidence that plaintiff failed to show that defendants did not exercise all required precaution."

See also: Cassady v. City of Billings, 135 Mont. 390, 340 P.2d 509; Matson v. Northern Hotel Inc., 152 Mont. 103, 446 P.2d 913; Anno. 61 ALR2d 6.

Plaintiff's proposed instruction No. 11 states that the two subsequent intervening accidents should not be considered in awarding damages, and secondly, that if the plaintiff suffered injuries in a fall on defendant's premises, she is entitled, regardless of subsequent intervening injuries, to recover damages not to exceed $100,000. The reference to intervening or subsequent injuries contained in this instruction was confusing and invades the province of the jury as to an issue of fact legitimately in

contention. The second premise in the instruction appears to be an imposition of absolute liability. The reference to $100,000 limitation of damages by reason of pleadings was covered in another instruction given by the court.

Plaintiff's proposed instruction No. 14, similar to the court's Instruction No. 8, states that the use of weak evidence or lack of denial can give rise to an inference against a party.

We have examined the entire record and the fifteen instructions actually given at trial and we find no prejudicial error. The jury was well and fairly instructed. Some of plaintiff's offered instructions were misleading or erroneous statements of the law in this case. Others were merely repetitive of instructions given by the trial court. The trial court, in jury instructions, is required to give the relevant law favoring both sides. It is not required to give repetitive jury instructions. Where two analogous instructions are offered the court may, in the exercise of its sound discretion, give the instruction which makes the fairest and best statement of the law to the average juryman.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices.

Mr. Justice Frank I. Haswell deeming himself disqualified did not take part in this Opinion.

- 8 -