No. 96-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

DONNA RICHARDSON,

Plaintiff and
Appellant,

vs.

CORVALLIS PUBLIC
SCHOOL
DISTRICT NO.
1,

Defendant and Respondent.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dennis E. Lind, Paul N. Tranel, Datsopoulos, MacDonald & Lind,
Missoula,          Montana

For Respondent:

Bradley J. Luck, Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: April 24, 1997

Decided:    December 23, 1997
Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Twenty-first Judicial District Court, Ravalli County.

Following a hearing, the District Court granted Defendant Corvallis Public School District No. 1 (the School) summary judgment. From this judgment, Plaintiff Donna Richardson (Donna) appeals. We affirm.

The only issue raised on appeal is whether the District Court erred in granting summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of December 17, 1992, Dan Rochester (Donna's boyfriend) drove Donna and her son, Lance Richardson, to the Corvallis High School. After parking their car, Donna walked with Lance into the School to explain his tardiness. Taking the straightest route from their parked car to the school building, Donna uneventfully walked over a path in the snow which crossed a grass area in front of the School. After remaining in the School for approximately five minutes, Donna returned by way of the same route toward her car. However, part way across the path in the snow which crossed the grass area, Donna slipped, fell and sustained injuries. Donna testified in her deposition that it was a cold morning, that the path consisted of packed, but not slippery snow, and that the path appeared to be safe.

On May 1, 1995, Donna filed a complaint against the School in the Twenty-First Judicial District Court, Ravalli County. On January 8, 1996, the School filed a motion for summary judgment. The District Court heard oral argument on the School's motion on May 21, 1996, and, thereafter, granted summary judgment on June 20, 1996. From this judgment, Donna appeals.

STANDARD OF REVIEW

In Wiley v. City of Glendive (1995), 272 Mont. 213, 216, 900 P.2d 310, 312, we set forth the standard of review concerning a district court's grant of summary judgment:

Under Rule 56(c), M.R.Civ.P., summary judgment is proper only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. The moving party has the initial burden to establish that there are no genuine issues of material fact. Once that burden has been met, the burden then shifts to the party opposing the motion to establish otherwise. Our review of a grant of summary judgment is de novo; we use the same criteria as the district court.

Ordinarily, negligence actions involve questions of fact and are not susceptible to summary judgment. However, when reasonable minds cannot differ, questions of fact can be determined as a matter of law. For example, if the moving party establishes that one element of a cause of action lacks any genuine issue of material fact and the non-moving party does not come forward with proof that a genuine issue does exist, summary judgment is proper. [Citations omitted.]

Furthermore, if the district court reaches the correct result, we will uphold the court's judgment regardless of the reasons supporting its decision. Singleton v. L. P. Anderson Supply Co. (Mont. 1997), 943 P.2d 968, 970, 54 St.Rep. 738, 739 (citation omitted).

## DISCUSSION

### Did the District Court err in granting summary judgment?

Relying on Donna's undisputed version of the facts, the District Court granted the School summary judgment as a matter of law. The District Court ruled that the School had no duty to warn because the path where Donna fell contained no hidden or lurking dangers. Rather, the District Court concluded that the condition of the path was open and obvious. Citing Cereck v. Albertson's Inc. (1981), 195 Mont. 409, 637 P.2d 509, the District Court held that even assuming that the School took affirmative action to plow or maintain the path, such action did not create or increase the hazard. Additionally, the District Court concluded that nothing in the record indicated that the School should have anticipated injury to Donna. Accordingly, the District Court held that the School used ordinary care to keep the premises reasonably safe.

Donna argues that the District Court erred in granting the School summary judgment. Based on the evidence in the record which consists of Donna's deposition testimony, pictures of the area where she fell and the affidavits of Lance Richardson and Dan Rochester, Donna asserts that material questions of fact exist. Specifically, relying on Cereck, 637 P.2d 509, and Willis v. St. Peter's Hospital (1971), 157 Mont. 417, 486 P.2d 593, Donna contends that material questions of fact exist concerning whether the School altered the normal condition of the area where she fell by designating and maintaining a walkway over natural ground; whether the School affirmatively allowed the appearance of a walkway over uneven natural ground, thus creating a new or increased hazard; whether the School created a hidden dangerous condition; and, consequently, whether the School had an obligation either to provide a sign warning of the altered conditions or to block off the area. The School responds that the District Court correctly granted summary judgment because Donna failed to present evidence sufficient to raise any genuine issues of material fact. We agree.

To prove negligence, a plaintiff must establish four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. Wiley, 900 P.2d at 312 (citation omitted). "[A]ctionable negligence arises only from breach of a legal duty. Therefore, in order for there to be a genuine issue of material fact in a negligence case there must be a duty imposed upon the defendant and allegations which, if proven, would support a finding

of
a breach of the duty." Rennick v. Hoover (1980), 186 Mont. 167, 170, 606 P.2d 1079,
1081 (citations omitted).

We have consistently held as a matter of law that "the owner of a premises has a
duty to use ordinary care in maintaining his premises in a reasonably safe condition
and
to warn of any hidden or lurking dangers." Brown v. Demaree (1995), 272 Mont. 479,
482, 901 P.2d 567, 569 (citing Limberhand v. Big Ditch Co. (1985), 218 Mont. 132,
144-45, 706 P.2d 491, 498; Davis v. Church of Jesus Christ of LDS (1990), 244 Mont.
61, 67, 796 P.2d 181, 184). However, while we have consistently held that a property
owner owes this general duty of care, we have not consistently articulated a
standard by
which the fact finder can determine whether a property owner has breached this duty.
That is, we have not articulated a standard to determine what constitutes a
"reasonably
safe condition." Rather, in Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88,
446
P.2d 921; Cereck, 637 P.2d 509; Kronen v. Richter (1984), 211 Mont. 208, 683 P.2d
1315; and Limberhand, 706 P.2d 491, we have set forth conflicting standards.
Consequently, we take this opportunity to set forth one consistent standard.

In Luebeck v. Safeway Stores, Inc., Luebeck, a customer, sued Safeway Stores,
Inc. for damages after she slipped, fell and broke her ankle while walking back to
her car
across Safeway's parking lot which was covered with a natural accumulation of ice and
snow. Before a jury, Luebeck testified that she knew she had to walk carefully
because
the condition of the parking lot was bad. Additionally, the manager of Safeway
testified
that he also knew the condition of the parking lot was hazardous but had done nothing
about it. Thereafter, the district court entered judgment upon a jury verdict in
Luebeck's
favor and Safeway appealed. Luebeck, 446 P.2d at 922.

On appeal, we held that Safeway, as a property owner, had a duty to use ordinary
care to have the premises reasonably safe or to warn of any hidden or lurking
dangers.
Luebeck, 446 P.2d at 922-23. However, we also held that "where danger created by the
elements such as the forming of ice and the falling of snow are universally known,
or as
here, actually known, there is no liability." Luebeck, 446 P.2d at 924. Accordingly, we
reversed the judgment of the district court and dismissed the cause of action against
Safeway. Luebeck, 446 P.2d at 924.

Subsequently, in Cereck, we again held that the defendant property owner had a
duty to use ordinary care to keep the premises in a reasonably safe condition and to
warn
of any hidden or lurking dangers. Cereck, 637 P.2d at 511. Additionally, we also
stated
that "[this] duty is satisfied if the condition is obvious or actually known." Cereck, 637
P.2d at 511 (citing Rennick, 606 P.2d 1079; Luebeck, 446 P.2d 921; and Regedahl v.
Safeway Stores, Inc. (1967), 149 Mont. 229, 425 P.2d 335). More specifically, we
pointed out that in prior cases involving injuries caused by icy conditions, we had

held
that "no liability [is] imposed upon the landowner where the danger created by the elements such as the forming of ice and the falling of snow is universally known or actually known."   Cereck, 637 P.2d at 511 (citing Rennick, 606 P.2d 1079; Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383; Luebeck, 446 P.2d 921).   However, because the property owner in Cereck altered the natural accumulation
of ice and snow, we did not apply the standard set forth in Luebeck.  Rather, we adopted
a new standard for determining property owner liability in situations where natural accumulations of ice and snow had been altered.  Cereck, 637 P.2d at 511.

Cereck, a customer, sued defendants, Albertson's grocery store and Holiday Village Shopping Center, for damages after she slipped, fell and injured her left leg and
hip while attempting to cross over a snow bank which was several feet high and located
on the parking lot in front of Albertson's store entrance.  Cereck, 637 P.2d at 510.  The
evidence in the record revealed that while walking through a passageway that had been shoveled through the snow bank, Cereck observed a water puddle and, believing she could not step over it, tried unsuccessfully to cross over the snow bank.  As a result, she
slipped, fell and sustained injuries.  Cereck, 637 P.2d at 510.  The evidence in the record
also revealed that Holiday Village Shopping Center was responsible for maintaining the
parking lot and that its manager knew a snow bank existed in front of Albertson's store
entrance.  The shopping center had hired a janitorial service to keep store entrances,
including Albertson's, free of ice and snow.  Part of this job included shoveling passageways through existing snow banks to provide customers access from the parking lot to the store entrances.  Cereck, 637 P.2d at 510.  Based on this evidence, the district
court granted the defendants summary judgment and Cereck appealed.  Cereck, 637 P.2d at 510.

On appeal, we distinguished Luebeck factually and adopted the following standard to determine property owner liability in situations where a property owner has affirmatively altered the natural accumulation of ice and snow:

A property owner may be held liable for falls on accumulations of ice and snow where the hazard created by the natural accumulation is increased or a new hazard is created by an affirmative act of the property owner; even where such a condition is actually known or obvious, a property owner may be held liable if he should have anticipated that injuries would result from the dangerous condition.

Cereck, 637 P.2d at 511 (citing Rennick, 606 P.2d 1079; Restatement (Second) of Torts õ 343A(1) (1965)).  Based on this standard, the majority in Cereck reversed the district
court and held that summary judgment was precluded because material questions of fact existed as to whether the piling of snow increased the hazard created by the natural accumulation of ice and snow and whether the defendant store should have anticipated injuries to Cereck.  Cereck, 637 P.2d at 512.

Concurring, Justice Morrison disapproved of the majority's confinement of property owner liability for accumulations of ice and snow to only those situations where the property owner has increased or changed the hazard by an affirmative act. Cereck, 637 P.2d at 512. Rather than limiting property owner liability in this way, Justice Morrison instead encouraged the adoption of the Restatement (Second) of Torts õ 343A(1) (1965). He explained:

> In my opinion, the restrictive ratio decidendi of this case is inadequate to meet situations such as failure to plow. If the parking lot in question had not been maintained in any fashion, and snow were allowed to accumulate so that customers were required to wade through knee deep snow, no duty would be owed by the possessor under the rule adopted by the majority. Those who do nothing incur no liability. Those who plow their parking lots are exposed.
>
> I believe such a restrictive duty does not adequately recognize the responsibilities owed by the business community, does not adequately protect a public dependent upon the services provided by that community, and does not promote sound public policy.

Cereck, 637 P.2d at 512.

Three years later, in Kronen, we did adopt Restatement (Second) of Torts õ 343A(1) (1965). Kronen, 683 P.2d at 1317. Kronen, a customer, sued Richter, the owner of the defendant beauty salon, for injuries she sustained when she fell on a step in the salon. The salon was divided between a linoleum covered area used for washing, cutting and styling hair and a carpeted area, elevated one step higher, where hair dryers were located. A salon employee washed and set Kronen's hair in the linoleum covered area and then accompanied her, up the step, to the carpeted drying area. Forty-five minutes later, the employee motioned for Kronen to return to the linoleum covered styling area. In her deposition, Kronen testified that as she returned, she did not see the step because the whole floor seemed to blend together, and, consequently, she fell onto the linoleum. The district court granted Richter summary judgment ruling that the undisputed facts failed to show that Richter breached the duty of ordinary care. On appeal, Kronen argued in part that summary judgment was improper because genuine issues of material fact existed concerning Richter's duty to warn her of the danger caused by the step in the salon. Kronen, 683 P.2d at 1316-17.

Just as we did in Luebeck and Cereck, we held in Kronen that the defendant owed a duty to exercise ordinary care to have the premises reasonably safe and to warn of any hidden or lurking danger. Kronen, 683 P.2d at 1317. However, we then quoted Restatement (Second) of Torts õ 343A(1) (1965), which provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is know[n] or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Kronen, 683 P.2d at 1317. Furthermore, we also held that "[a property] owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses." Kronen, 683 P.2d at 1317-18 (citing Demaree v. Safeway Stores, Inc. (1973), 162 Mont. 47, 508 P.2d 570).

We noted that Kronen failed to provide evidence showing that a hidden danger or unsafe condition existed in the area surrounding the step. Further, we noted that because Kronen had walked over the step once she had knowledge of the existence and location of the step. Therefore, we affirmed the district court, concluding that Kronen had failed to show that a hidden danger or unsafe condition existed in the area surrounding the step where she fell and that she failed to observe that which would be obvious through reasonably expected use of an ordinary person's senses. Kronen, 683 P.2d at 1318. Accordingly, we held that Richter did not have a duty to warn Kronen of an obvious danger. Kronen, 683 P.2d at 1318 (citing Demaree, 508 P.2d 570).

Again, as he did in Cereck, Justice Morrison specially concurred with the majority opinion in Kronen. While he approved of the adoption of Restatement (Second) of Torts õ 343A(1) (1965) (hereinafter õ 343A(1)), he objected to another portion of the majority opinion:

Certainly the rationale of Cereck is that a duty may be owed though the condition is open and obvious if the land owner has reason to believe that despite the open and obvious nature of the condition, that injuries will nevertheless result. The language in the majority opinion which I find objectionable follows the restatement quotation and is as follows:

"The owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses."

This formerly was the law in Montana. The law was changed in Cereck where summary judgment for defendant was reversed though the condition was open and obvious. There is a duty to warn if the land owner anticipates that injuries will nevertheless result.

In this case plaintiff has failed to come forth with evidence creating a duty on the part of the land possessor to warn because there is no evidence showing that the land possessor, respondent here, should have anticipated plaintiff's injuries. There is a total failure of proof to show that the condition of the premises was defective or unreasonably dangerous.

Kronen, 683 P.2d at 1318.

After adopting õ 343A(1), which limited a property owner's duty of care to invitees, we held in Limberhand that the status of the injured party as an invitee, licensee or trespasser does not affect a property owner's general duty of care because "[t]he test is always not the status of the injured party but the exercise of ordinary care in

the circumstances by the landowner." Limberhand, 706 P.2d at 496. In Limberhand, we also addressed several other issues including whether an open irrigation ditch was sufficiently dangerous so that the landlords of an apartment complex were required to take precautionary measures to satisfy their general duty of care. Limberhand, 706 P.2d at 498-99. We explained:

The apartment owners owed a duty in this case to use ordinary care to have their premises reasonably safe or to warn of any hidden or lurking danger. What constitutes reasonably safe premises is generally considered to be a question of fact. Whether a premises is safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics, and the type of person who would foreseeably visit the premises, as well as the specific type of hazard or unsafe condition alleged. These and other factors are embodied in the legal concept of "reasonable under the circumstances."

Limberhand, 706 P.2d at 498-99. That is, a property owner is not an absolute insurer of the safety of his property. Limberhand, 706 P.2d at 499. Rather, a property owner's duty to others is "to use that degree of ordinary care which reasonable persons would use under the same or similar circumstances." Limberhand, 706 P.2d at 499. Based on the evidence in the record, we concluded that a material question of fact existed as to whether the landlords breached their duty to keep their premises reasonably safe. Limberhand, 706 P.2d at 499.

As evident in the above discussed cases, we have consistently held, as a matter of law in premise liability cases, that property owners owe a general duty of ordinary care to have their premises reasonably safe and to warn of any hidden or lurking dangers. And, in most premise liability cases, to determine whether a property owner has breached this duty, we have applied the standards set forth in Restatement (Second) of Torts õ 343A(1) (1965) and Limberhand. See e.g. Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 718 P.2d 1341; Cooper v. Sisters of Charity (1994), 265 Mont. 205, 875 P.2d 352; Wiley, 900 P.2d 310; Brown, 901 P.2d 567; and Welton v. Lucas (Mont. 1997), 940 P.2d 112, 54 St.Rep. 562. However, despite the fact that õ 343A(1) encompasses "any activity or condition on the land," in premise liability cases involving accumulations of ice and snow, we have ignored õ 343A(1) and Limberhand and have instead applied the narrower standards set forth in Luebeck and Cereck to determine property owner liability. See e.g. Boehm v. Alanon Club (1986), 222 Mont. 373, 722 P.2d 1160, and Davis, 796 P.2d 181. In view of our adoption of the language of õ 343A(1) and our holding in Limberhand, we conclude that when determining property owner liability, the artificial distinction previously made between natural and altered accumulations of ice and snow in cases such as Luebeck and Cereck cannot be justified.

Likewise, in view of our adoption of õ 343A(1) and our holding in Limberhand, we conclude that the former standard absolving property owners from liability for injuries caused by open and obvious dangers cannot be justified either. See e.g. Luebeck, 446 P.2d 921, and Rennick, 606 P.2d 1079.

We agree with Justice Morrison that unlike the rule adopted in Cereck, the language of õ 343A(1) should not be limited to only those situations where a property owner alters the natural accumulation of ice and snow. Rather, the language of õ 343A(1) encompasses "any activity or condition on the land" including both natural and altered accumulations of ice and snow. Furthermore, the arbitrary denial of liability for the natural accumulation of ice and snow which is open and obvious runs contrary not only to the language of õ 343A(1), but also to the "reasonable under the circumstances" standard expressed in Limberhand. As Justice Morrison explained in his concurring opinion in Cereck, it does not follow that in the case of accumulation of ice and snow, "[t]hose who do nothing incur no liability [and] [t]hose who plow . . . are exposed." See Cereck, 637 P.2d at 512. Such a rule also makes little sense given that many communities have adopted ordinances that require property owners to remove ice and snow from their sidewalks and parking lots.

Additionally, we agree with Justice Morrison that while the majority's adoption of õ 343A(1) in Kronen was appropriate, the majority's following statement, in light of the adoption of õ 343A(1), was not:

The owner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses.

Kronen, 683 P.2d at 1318. As Justice Morrison pointed out, this was the law prior to our adoption of õ 343A(1). That is, prior to our adoption of õ 343A(1), a property owner was absolved of liability if a person was injured due to an open and obvious condition upon the land. See e.g. Luebeck, 446 P.2d 921, and Rennick, 606 P.2d 1079. However, in light of õ 343A(1), "a duty may be owed though the condition is open and obvious if the land owner has reason to believe that despite the open and obvious nature of the condition, that injuries will nevertheless result." Kronen, 683 P.2d at 1318 (J. Morrison concurring). And in that regard, we also disagree with the majority's conclusion that the defendant did not have a duty to warn Kronen of an obvious danger. Kronen, 683 P.2d at 1318. As Justice Morrison explained, the defendant in Kronen had no duty to warn Kronen of the step, not because the danger was obvious, as the majority concluded, but because "[t]here [was] a total failure of proof to show that the condition of the premises was defective or unreasonably dangerous." Kronen, 683 P.2d at 1318 (J. Morrison concurring).

Recently, in Welton, we considered these same issues. Specifically, we rejected

an argument made by the defendant property owners that because the plaintiff knew of the existence of the pipe over which she fell and injured herself, they were absolved of any liability for her injuries:

[Defendants] cite Kronen v. Richter (1984), 211 Mont. 208, 683 P.2d 1315, for the proposition that a property owner is entitled to assume that people will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses and Limberhand v. Big Ditch Company (1985), 218 Mont. 132, 144-45, 706 P.2d 491, 499, for the proposition that a property owner's duty is satisfied if the hazardous condition is obvious or actually known.  This rule, however, is not absolute as we recognized in Kronen wherein we cited Restatement (Second) of Torts õ 343A(1) (1965):

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Although Welton may have been aware of the pipe, she alleged in her second amended complaint that she was unable to observe the pipe due to inadequate lighting in the cooler.  Further, Welton, who was shelving beer at the time of the accident, testified in her deposition that:  "And with the stuff being stacked as high as it is, when there's no lighting, you could faintly, faintly see the pipe--you knew it was somewhere in that area--while stocking."  Given the existence of a pipe on a floor in a dimly lit traffic area where it is known that workers will be carrying and shelving products, there is a question of fact as to whether the possessor of the land should anticipate harm despite the obviousness of the pipe or despite Welton's knowledge of the pipe.

Welton, 940 P.2d at 116 (emphasis added).

In light of our adoption of õ 343A(1) as well as our decision in Limberhand, we hold that the interests of both the possessors of premises and those persons foreseeably on the premises are better served by our adoption of the following standard of care:

The possessor of the premises has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers.  What constitutes a reasonably safe premises is generally considered to be a question of fact.  Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics; the type of person who would foreseeably visit, use or occupy the premises; and the specific type of hazard or unsafe condition alleged.  The possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

In other words, the possessor of the premises may no longer avoid liability simply because a dangerous activity or condition on the land is open and obvious; this includes avoiding liability for open and obvious natural accumulations of ice and snow.  Rather,

the possessor of the premises may only be absolved from liability for injuries resulting from open and obvious dangers if he should not have anticipated harm to occur.  This does not mean that the possessor of the premises is an absolute insurer of the safety of the premises.  See Limberhand, 706 P.2d at 499.  Instead, whether the possessor of the premises should have anticipated harm depends on "the degree of ordinary care which reasonable persons would use under the same or similar circumstances." See Limberhand, 706 P.2d at 499.

We conclude that this standard of care is not only more consistent with the body and trend of Montana's premises liability law as that has developed over the years, but is also more compatible with the general statutory standards of care articulated by the legislature, neither of which incorporate exceptions for open and obvious activities or conditions, much less for natural or altered ice and snow accumulations.  That is,

[e]xcept as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

Section 27-1-701, MCA.  And,

[e]very person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of his rights.

Section 28-1-201, MCA.

Furthermore, our decision here follows "[t]he manifest trend of the courts in this country . . . away from the traditional rule absolving, ipso facto, owners and occupiers of land from liability for injuries resulting from known or obvious conditions, and toward the standard expressed in section 343A(1) of the Restatement (Second) of Torts (1965)."  Ward v. K Mart Corp. (Ill. 1990), 554 N.E.2d 223, 231 (citation to other jurisdictions omitted).  See also Richard L. Ferrell, III, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles, 21 Ohio N. Univ. L. Rev. 1121, 1138 (1995).  Finally, and again consistent with this trend, we note that our sister State, Washington, has recently made clear its adoption of the standard of care set forth at õõ 343 and 343A of the Restatement (Second) of Torts (1965) and its rejection of the historical "natural accumulation" rule with regard to premises liability cases involving snow and ice.  Iwai v. State (1996), 129 Wash.2d 84, 915 P.2d 1089.  Consequently, Luebeck, 446 P.2d 921; Willis, 486 P.2d 593; Uhl v. Abrahams

(1972), 160 Mont. 426, 503 P.2d 26; Dunham, 548 P.2d 1383; Cereck, 637 P.2d 509; Boehm, 722 P.2d 1160; Blaskovich v. Noreast Development Corp. (1990), 242 Mont. 326, 790 P.2d 977; Davis, 796 P.2d 181, and any other Montana case that has determined property owner liability based upon the artificial distinction between natural or altered accumulations of ice and snow which are open and obvious are hereby overruled to that extent. Furthermore, Regedahl, 425 P.2d 335; Demaree, 508 P.2d 570; Folda v. City of Bozeman (1978), 177 Mont. 537, 582 P.2d 767; Rennick, 606 P.2d 1079; Cereck, 637 P.2d 509; Krone v. McCann (1982), 196 Mont. 260, 638 P.2d 397; Kronen, 683 P.2d 1315, and any other Montana case that has set forth the standard that a property owner is absolved of liability because a dangerous condition upon the premises is open and obvious are also hereby overruled to that extent.

We now turn to the case at bar. Here, the District Court awarded the School summary judgment by applying the standard set forth in Cereck. As we discussed previously, Cereck is no longer the appropriate standard to apply in determining property owner liability. Therefore, while we agree with the District Court that summary judgment was appropriate in this case because no genuine issues of material fact exist, we do so based on õ 343A(1), Limberhand and our newly adopted standard of care. Consequently, whether the School affirmatively altered the natural accumulation of ice and snow on its premises is not determinative of the School's liability. Rather, any such acts are only considered as factors in determining whether the School acted "reasonably under the circumstances." See Limberhand, 706 P.2d at 498-99.

As a matter of law, the School had a duty to use ordinary care in maintaining the school grounds in a reasonably safe condition and to warn of any hidden or lurking dangers. However, whether the School breached this duty of ordinary care is a question of fact. In general, negligence actions involve questions of fact, and, therefore are not susceptible to summary judgment. Brown, 901 P.2d at 570. Yet, where reasonable minds cannot differ, questions of fact can be determined as a matter of law. Brown, 901 P.2d at 570. In this case, the District Court, relying upon Donna's undisputed version of the facts, determined that no material issues of fact existed and that the School did not breach its duty of ordinary care. Having reviewed the record, we conclude that the District Court was correct in granting the School summary judgment.

First, contrary to Donna's assertion, a material question of fact does not exist concerning whether the School created a hidden dangerous condition by allowing the appearance of walkway over uneven ground where no sidewalk actually existed. Donna asserts that a hidden dangerous condition existed based on the fact that at the time of her injury she did not know that the portion of the snow packed path on which she fell

crossed an area of grass rather than a cement sidewalk. However, despite her claim that the path crossed uneven ground, Donna testified in her deposition that the path appeared plowed and described the path as snow packed and only "a little bumpy." Additionally, she testified in her deposition that the path was not slippery and that she had walked over it uneventfully only moments before she fell. Based on this testimony, reasonable minds could not differ in concluding that the condition of the path was not a hidden danger, but rather that the condition of the path was known and obvious to Donna.

Furthermore, we disagree with Donna's argument that even if the snow packed condition of the path was actually known or obvious, material questions of fact still exist concerning whether the School should have anticipated her injuries. As the parent of a student attending the School, Donna was a person foreseeably on the School's premises. Further, Donna was injured when she slipped and fell on a snow packed path that existed on the School's premises. However, because the snow packed path was known and obvious to her, the School will not be held liable for Donna's injuries unless the School should have anticipated Donna's injuries despite such knowledge or obviousness. Donna testified that the snow packed path appeared to be the safest route into the School because it appeared plowed with snow berms several feet high on each side of the path and because it led directly from her parked car to one of the School's entrances. Donna also admitted in her deposition that she had walked across the path uneventfully on her way into the School and that it was not slippery. Furthermore, Donna presented no evidence contradicting the School's position that the sidewalks around the School were appropriately maintained and safe to walk on at the time of her fall. In fact, Donna testified that if she were presented with the same conditions again, she would have parked in the same location and walked toward the School along the same path. Under the circumstances of this case, reasonable minds could not differ in concluding that the School should not have anticipated Donna's injuries.

Once the School established that no material questions of fact existed, the burden shifted to Donna, as the person opposing summary judgment, to prove otherwise. Wiley, 900 P.2d at 312. The District Court relied on Donna's undisputed version of the facts in granting the School summary judgment. On appeal, Donna has failed to set forth specific facts establishing that material questions of fact exist and instead merely

sets forth
her own interpretation of the facts.   See Sprunk v. First Bank System (1992), 252 Mont.
463, 466, 830 P.2d 103, 105.   Because no material questions of fact exist in this case,
we hold that the District Court properly granted summary judgment.
Affirmed.


/S/   JAMES C. NELSON

We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   JIM REGNIER
/S/   KARLA M. GRAY
/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART