DA 11-0778

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 2

CRAIG STEICHEN,

        Plaintiff and Appellant,

   v.

TALCOTT PROPERTIES, LLC;
BRESNAN COMMUNICATIONS, LLC,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-08-457
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Lawrence A. Anderson; Attorney at Law, P.C., Great Falls, Montana

       For Appellees:

           Kevin C. Meek, Jordan Y. Crosby; Ugrin, Alexander, Zadick &
           Higgins, P.C., Great Falls, Montana (for Talcott Properties)

                          Submitted on Briefs:  September 4, 2012
                                   Decided:  January 8, 2013

Filed:

               _____
                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Craig Steichen appeals from the District Court's December 27, 2011 order granting summary judgment to Talcott Properties.  We reverse.

¶2    We consolidate the issues for review stated by Steichen and we consider the following issue to be dispositive:  whether Talcott as a property owner had a duty of care to Steichen.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Talcott owned a building in Great Falls and leased space in the building to Bresnan Communications.  Steichen worked as an independent contractor for Bresnan, providing office cleaning services three nights a week.  He had no contractual relationship with Talcott. The incident that gave rise to this action occurred on July 17, 2005, when Steichen slipped in water on a restroom floor during his cleaning duties in Talcott's building,  and sustained a personal injury.

¶4    Under the Talcott-Bresnan lease, Talcott was required to "maintain the building structurally, including the roof and the water, gas, sewage, electrical, heating and cooling systems therein, together with the interior and exterior surfaces of the building."  Bresnan was responsible for "routine painting, cleaning and care of the interior of the leased premises" including the interior lights.  According to the District Court order, there was a chronic problem with water that leaked from the plumbing onto the restroom floor where Steichen fell.  Bresnan periodically called Talcott to report the leak, and Taclott would "send somebody over" to address the problem.  Despite Talcott's responses on these

occasions, the plumbing in the men's room continued to leak water onto the floor. Talcott's practice was to address maintenance of the building when Bresnan notified it of a problem. Talcott did not have an inspection schedule or a written maintenance policy for the building.

¶5 Steichen also alleged that there was a chronic problem with the lighting in the building, including the lighting in the men's room. Pursuant to the lease, Bresnan assumed responsibility for maintaining the lighting. Plaintiff alleges that when he fell and sustained injury the lighting in the men's room was dim and there was a puddle of water on the floor.

¶6 Steichen sued Bresnan and Talcott. He settled with Bresnan and the District Court granted summary judgment to Talcott. Steichen appeals.

## STANDARD OF REVIEW

¶7 This Court reviews a district court's rulings on summary judgment de novo, using the same criteria as the district court under M. R. Civ. P. 56. *Krajacich v. Great Falls Clinic*, 2012 MT 82, ¶ 8, 364 Mont. 455, 276 P.3d 922. Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c); *Town & Country Foods v. City of Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283. Material facts involve the elements of the cause of action or the elements of defenses to an extent that requires resolution by a trier of fact. *Corporate Air v. Edwards Jet Center*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111. The party moving for summary judgment bears the initial burden of establishing the absence of genuine issues of material fact and entitlement to

judgment as a matter of law. If so, the burden shifts to the opposing party to establish that genuine issues of material fact exist. *Corporate Air*, ¶ 25. The district court's determination as to whether a party is entitled to judgment on the facts is a conclusion of law that this Court reviews to determine whether it is correct. *Hughes v. Lynch*, 2007 MT 177, ¶ 8, 338 Mont. 214, 164 P.3d 913.

## DISCUSSION

¶8 Issue: whether Talcott as a property owner had a duty of care to Steichen.

¶9 The District Court concluded that Talcott did not owe a legal duty to prevent injury to Steichen, and granted summary judgment to Talcott. The District Court noted the principles of premises liability applied in Montana, citing the leading case of *Richardson v. Corvallis Public School District*, 286 Mont. 309, 950 P.2d 748 (1997). *Richardson* adopted the rule that a property owner has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn others of hidden or lurking dangers. "Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location, and other physical characteristics, the type of person who would foreseeably visit, use or occupy the premises, and the specific type of hazard or unsafe condition alleged." *Richardson*, 286 Mont. at 321, 950 P.2d at 755-756.

¶10 The District Court determined that the clear statement of premises liability in *Richardson* applied to this case. Accordingly, Talcott had a duty to exercise ordinary care in maintaining the building in a reasonably safe condition. Steichen's argument that

Talcott should have conducted periodic inspections of the condition of the building was only one factor in determining whether there was a breach of the duty of care.

¶11 Nonetheless, the District Court applied the rules from construction industry cases such as *Cunnington v. Gaub*, 2007 MT 12, 335 Mont. 296, 153 P.3d 1; *Fabich v. PPL, Montana*, 2007 MT 258, 339 Mont. 289, 170 P.3d 943; and *Beckman v. Butte-Silver Bow*, 2000 MT 112, 299 Mont. 389, 1 P.3d 348, and determined that Talcott owed no duty of care to Steichen because Steichen was an independent contractor working for Bresnan. The crucial factors were that Steichen was an independent contractor working for Bresnan; that Talcott did not retain any control over Steichen; that Steichen did not perform any inherently dangerous work; and that Talcott did not contractually assume responsibility for implementing safety precautions.

¶12 Finally, the District Court determined that even if Talcott were subject to the premises liability duty of care explained in *Richardson*, Talcott was still not liable to Steichen. The District Court noted that the danger—water on the restroom floor—was open and obvious; that Steichen's job was to clean up the water; and that Talcott had responded to each of Bresnan's repair requests. Based upon these facts, the District Court concluded that "no reasonable jury" could conclude that Talcott violated the requirement that it exercise ordinary care to maintain the building in a reasonably safe condition.

¶13 The District Court correctly determined that Talcott had a duty to Steichen to use ordinary care in maintaining the building in a reasonably safe condition, as explained in *Richardson*. The District Court erred, however, in applying the construction industry

5

liability standards to this case, and in determining that Talcott owed no duty to Steichen because Steichen was an independent contractor. This is not a construction site case and there was no reason to make any duty decision based upon Steichen's status as an independent contractor with Bresnan. Independent contractor status is relevant in construction industry cases, but not in ordinary premises liability cases.

¶14 In construction projects there are often layers of involvement with the project owner, the general contractor, subcontractors, independent contractors and employees of each of them. One of the rules of law that is applied to construction projects is that a prime or general contractor is not liable for injuries to employees of an independent contractor working on the job, *West v. Morrison-Knudsen*, 451 F.2d 493, 495 (9th Cir. 1971) (applying Montana law), unless the general contractor exerts control over the employee's work, *Umbs v. Sherrodd, Inc.*, 246 Mont. 373, 376, 805 P.2d 519, 520 (1991). There are three exceptions to this general rule of no liability: where there is a nondelegable duty based upon contract; where the activity is inherently dangerous; or where the general contractor negligently exercises retained control over a subcontractor's work. *Cunnington*, ¶ 13.

¶15 While the District Court sought to apply the rules and exceptions regarding general contractor liability, it is clear that they do not apply here.[1] There was no

---

[1] Steichen suggests that Talcott had a duty to provide him with a safe workplace. However, the duty to provide a safe workplace applies to employers, § 50-71-201, MCA, and Talcott and Steichen were not in an employer-employee relationship. Sections 39-71-117 and -118, MCA, defining employer and employee for purposes of workplace safety responsibilities. *Cain v. Stevenson*, 218 Mont. 101, 706 P.2d 128 (1985)

6

construction project, Talcott was not in any sense a general contractor, and Steichen's status as an independent contractor with Bresnan is not relevant as a matter of law. Such status distinctions—invitee, licensee, trespasser—were formerly applied to the injured party in premises liability cases to determine whether the property owner had a duty. These distinctions have been abandoned in favor of emphasis upon the exercise of ordinary care by the owner. *Richardson*, 286 Mont. at 317, 950 P.2d at 753; *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491 (1985).

¶16    In *Richardson*, relying on *Restatement (Second) of Torts* § 343A(1) (1965), we reiterated our holding in *Limberhand* that the status of the injured party does not affect a property owner's general duty of care, which depends on "the exercise of ordinary care in the circumstances by the landowner." *Richardson*, 286 Mont. at 317, 950 P.2d at 753 (quoting *Limberhand*, 218 Mont. at 140, 706 P.2d at 496). We also overruled a series of prior cases to the extent that they absolved a property owner of liability "because a dangerous condition upon the premises is open and obvious[.]" *Richardson*, 286 Mont. at 322, 950 P.2d at 756. "Rather," we concluded, "the possessor of the premises may only be absolved from liability for injuries resulting from open and obvious dangers if he should *not* have anticipated harm to occur." That, in turn, "depends on 'the degree of ordinary care which reasonable persons would use under the same or similar circumstances.'" *Richardson*, 286 Mont. at 321, 950 P.2d at 756 (emphasis in original).

---

(workplace safety duties can extend to general contractors in favor of employees of independent contractors in certain situations in construction industry cases).

¶17 As applied to this case, *Richardson* instructs that Talcott may not be found liable to Steichen for a "condition on the premises whose danger is known or obvious to [him], *unless* [Talcott] should anticipate the harm despite such knowledge or obviousness." *Richardson*, 286 Mont. at 321, 950 P.2d at 755-756 (emphasis added). Despite Steichen's knowledge of the leaking urinal and frequent presence of water on the floor, whether Talcott nonetheless should have anticipated harm is a jury question, since it depends on the degree of ordinary care that reasonable persons would use under the same or similar circumstances. *Richardson*, 286 Mont. at 321, 950 P.2d at 755-756.

¶18 Therefore, in this case it is not material to an analysis of duty or liability whether Steichen was an independent contractor, or a Bresnan employee, or a Bresnan customer, or a person delivering mail or packages to Bresnan. Talcott's duty to any of these persons is to use ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden or lurking dangers. *Richardson*, 286 Mont. at 318, 950 P.2d at 754. The District Court's conclusion of law that Talcott owed no duty of care to Steichen was incorrect.

¶19 The District Court further erred in granting summary judgment to Talcott based upon the determination that "no reasonable jury" could find that Talcott had breached the duty of ordinary care under the facts of the case. The question of whether Talcott breached its duty to use ordinary care in maintaining the building in a reasonably safe condition is an issue of fact properly left for a jury to determine. *Welton v. Lucas*, 283 Mont. 202, 208, 940 P.2d 112, 115-116 (1997). There was evidence that Talcott specifically assumed maintenance responsibilities under the lease with Bresnan, and that

Talcott understood that it had those responsibilities, for example, sending a plumber to work on the water leak when Bresnan called. The fact that Steichen and others may have known that water could be on the floor may be evidence for the jury to consider, but it was not determinative of whether Talcott reasonably maintained the premises. *Welton*, 283 Mont. at 209, 940 P.2d at 116.

¶20 In *Welton* we determined that the defendant property owner was not entitled to summary judgment on a store employee's premises liability claim. Despite the employee's knowledge of a pipe on the floor on which she tripped and fell, given its existence "in a dimly lit traffic area where it is known that workers will be carrying and shelving products, there is a question of fact as to whether the possessor of the land should anticipate harm despite the obviousness of the pipe or despite Welton's knowledge of the pipe." *Welton*, 283 Mont. at 209, 940 P.2d at 116. We cited *Welton* in *Richardson* in determining that the principles of *Restatement* § 343A(1) would best serve "the interests of both the possessors of premises and those persons foreseeably on the premises[.]" *Richardson*, 286 Mont. at 320, 950 P.2d at 755.

¶21 This is not a workplace safety case but a premises liability case. Thus, despite Steichen's status as an independent contractor for Talcott's lessee, he may seek damages under a premises liability theory for a known danger, but must prove that Talcott "should anticipate the harm despite such knowledge or obviousness." *Richardson*, 286 Mont. at 321, 950 P.2d at 756 (citation omitted). Whether Talcott had or should have conducted regular maintenance inspections are matters for the jury. Whether Talcott breached its duty is a question of fact to be determined by a jury.

9

¶22 The District Court therefore erred in granting summary judgment to Talcott. The District Court is reversed and this case is remanded for further proceedings.


/S/ Mike McGrath

We concur:

/S/ Michael E Wheat
/S/ Patricia O. Cotter
/S/ Beth Baker


Justice Jim Rice, dissenting.

¶23 I believe the Court extends our premises liability precedent to a point that is ill-conceived. When this Court abandoned the "trichotomy" of traditional entrant categories of invitee, licensee, and trespasser in favor of a single, uniform standard, it was not done, in my view, with the purpose of imposing on landowners a universal duty of care to every entrant, regardless of the facts or circumstances. Because I believe the Court's decision in this case is so founded, and is contrary to the sound public policy of not imposing duties for hazards inherent in the work an independent contractor was hired to do, I dissent.

¶24 To prove negligence in a premises liability case, a plaintiff must establish: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 313, 950 P.2d 748, 751 (1997). The "existence of a legal duty is a question of law to be determined by the court." *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 16, 342 Mont. 335, 181 P.3d 601. Usually, when determining

10

whether a duty exists, we "consider whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in injury to the plaintiff." *Fisher*, ¶ 17. However, in the context of premises liability we have eschewed this task, and, instead imposed the very broad rule that a premises owner "'has a duty to use ordinary care in maintaining his premises in a reasonably safe condition and to warn of any hidden or lurking dangers.'" *Richardson*, 286 Mont. at 313, 950 P.2d at 751 (quoting *Brown v. Demaree*, 282 Mont 479, 482, 901 P.2d 567, 569 (1995) (collecting Montana cases)). This rule imposes upon a landowner a duty of care to everyone, regardless of the facts. Although the Court acknowledges an exception to this rule for construction cases, it permits no exception here, holding that "it is not material to an analysis of duty or liability whether Streichen was an independent contractor, or a Bresnan employee, or a Bresnan customer, or a person delivering mail or packages to Bresnan." Opinion ¶ 16. I believe this one-size-fits-all duty of care to everyone is an overbroad statement of the law of duty and a product of haste to simplify premises liability law.

¶25 Courts and commentators have noted that courts have been reluctant to abolish the trichotomy precisely because of the possibility it could detrimentally oversimplify premises liability law:

> [The recent shift back toward specific entrant rules] may reflect a more fundamental dissatisfaction with certain developments in accident law that accelerated during the 1960s—the reduction of whole systems of legal principles to a single perhaps simplistic, standard of reasonable care, the sometimes blind subordination of other legitimate social objectives to the goals of accident prevention and compensation, and the commensurate shifting of the decisional balance of power to the jury from the judge.

11

W.P. Keeton, *Prosser & Keeton on the Law of Torts* 433-32 (West, 5th ed., 1984); *see also Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo. 1995) (en banc) (quoting the above passage and reasoning that abandoning all questions of duty based on the situation of entrant for the "amorphous 'reasonable care under the circumstances' standard seems—to put it kindly—improvident."). While this one-size-fits-all rule of duty is admittedly simple, it is illogically broad.

¶26 There are situations where the specific hazard and the relationship between the landowner and the entrant warrant a finding of no duty as a matter of law. One practical exception recognized by courts is when the entrant is injured by hazards attendant with the very job for which the landowner asked the entrant to enter the premises:

> Landowner liability does not extend to employees of an independent contractor whose injuries result from the very risks which are inherent in the work which they are hired to perform. Where an individual's injury arises out of the performance of work for which an independent contractor is employed and while that activity is being conducted by and under the control of the independent contractor, the duty to protect the independent contractor's employees is that of the contractor and not the owner or occupier.

2 *Premises Liability*: *Independent Contractors and Their Employees* § 39:7 (West 3d ed., 2002); *Jones v. Chevron*, 718 P.2d 890, 894 (Wyo. 1986) ("An owner is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform."); *Baum v. Rowland*, 281 A.D. 964, 120 N.Y.S.2d 620 (1953) ("Plaintiff, having undertaken to repair the plaster on the ceiling, assumed the risk that it might fall, so that there was no duty owed to him, as would have been the case toward other types of invitees upon the premises."); *Cassano v.*

*Aschoff*, 543 A.2d 973, 976 (N.J. Super. 1988) (noting that New Jersey continues to adhere to rule that "landowner liability does not extend to employees of an independent contractor whose injury results from the very risks which are inherent to the work they were hired to perform."). In *Cassano*, the plaintiff worked for an independent contractor engaged in the tree-removal business. *Cassano*, 543 A.2d at 974. While removing trees from the property, he was struck by a falling tree limb and injured. He sued the landowner under a general premises liability theory that the landowner owed "a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers[.]" *Cassano*, 543 A.2d at 975. The court acknowledged this was the general rule, but held it did not extend to the specific circumstances of the case because landowners do not owe a duty to protect independent contractors from dangers inherent in the job they were hired to perform. *Cassano*, 543 A.2d at 975. Such is the case here.

¶27 Bresnan hired Steichen as an "independent contractor" to clean its office. Opinion, ¶ 3. As part of his duties, Steichen emptied garbage, cleaned tables, vacuumed, buffed floors, and cleaned the men's and women's bathrooms. Part of his cleaning of the bathroom required him to mop and wax the floors. Steichen had extensive experience with the plumbing leaks in the bathroom. As the District Court noted, Steichen asserted that "the urinal was always dripping," that the toilet was "constantly leaking," and that he "could almost assume it would flood every day." It was his job to routinely mop up the water from the bathroom floor, and there is no allegation that the leaking that allegedly caused his fall was out of the ordinary.

13

¶28 As noted above, duty is supposed to be a matter of law for the court to decide, taking into consideration public policy and foreseeability. *Fisher*, ¶ 17. This task requires courts to determine whether it is proper to impose a duty upon landowners in consideration of the circumstances, including the parties' relationships. Under that inquiry, I would answer no. It is illogical and poor policy to require a landowner to protect independent contractors from hazards inherent in the very job the contractor was hired to perform.

¶29 I would affirm the District Court.


/S/ Jim Rice