FILED

04/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0334

DA 24-0334

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 88

DERIK L. SEYMOUR,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2020-1822
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Michael C. Doggett, Doggett Law Offices, P.L.L.C., Missoula, Montana

      For Appellee:

      Matthew B. Hayhurst, Thomas J. Leonard, Boone Karlberg P.C., Missoula, Montana

Submitted on Briefs:  March 5, 2025

Decided:  April 29, 2025

Filed:

_____
Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1     Derik L. Seymour appeals from a March 26, 2024 order of the First Judicial District Court. The District Court found Seymour failed to present admissible evidence the State breached its standard of care in a negligence suit and granted the State's motion for summary judgment. We affirm.

¶2     We restate the issue on appeal as follows:

*Did the District Court err when it found Seymour had failed to present sufficient evidence to establish the State's standard of care?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On November 3, 2017, Seymour was using a cable crossover exercise machine at the Bulldog Athletic Recreation Center at the University of Montana-Western in Beaverhead County, Montana. The cable snapped while Seymour was using the machine, and he was allegedly severely injured. On October 27, 2020, Seymour filed a complaint against the State of Montana and University of Montana-Western (State), alleging negligence and negligence-premises liability for improperly maintaining the exercise equipment.

¶4     On September 19, 2022, Seymour filed an expert witness disclosure. In it, Seymour stated he expected Larry Smiltneek to testify regarding the failure of the machine cable, including its causes, conditions, and the measures the State should have taken to prevent the failure. Attached to the disclosure was an investigative report by Smiltneek opining on the cause of the cable's failure.

2

¶5 On October 18, 2022, Seymour's counsel moved to withdraw, which the District Court granted. Seymour was thereafter unable to find continued representation and proceeded pro se. Pursuant to the State's motion, the District Court set a status conference for April 2023 after no action had been taken on the case since counsel's withdrawal. Seymour asserted he had been diligently looking for new counsel to represent him. The court gave him an additional 30 days to secure counsel or file a notice of intent to move forward pro se and set a new deadline of August 28, 2023, to complete discovery.

¶6 On August 17, the State filed a motion to dismiss for failure to prosecute, or to extend the discovery deadline as Seymour had repeatedly failed to respond to the State's discovery. The court "recognize[d] the frustration of the defense in attempting to address this case. Plaintiff has generally failed to prosecute the case." Nevertheless, after "expressly notifying Plaintiff that if he continues to be unwilling or unable to follow [c]ourt orders, rules and deadlines, the [c]ourt will look favorably on a motion to dismiss," it extended the discovery deadline yet again to December 15, 2023, and ordered Seymour appear for a deposition within 45 days.

¶7 On January 15, 2024, the State filed a motion for summary judgment, arguing in part that Seymour had failed to secure a liability expert who would testify at trial, despite the applicable standard of care being outside the knowledge of an ordinary juror. The State cited to Seymour's deposition, where he stated he did not intend to call Smiltneek at trial as an expert witness. Although Seymour later stated he did intend to call Smiltneek at trial, the State argued Smiltneek did not opine on the State's standard of care, only the cause of the cable failure. Seymour responded that he expected Smiltneek to testify at trial and

3

attached his investigation report, which indicated the State had forgone the manufacturer's suggested inspection schedule of the machine.

¶8    The District Court granted summary judgment for the State, concluding Seymour had failed to introduce any admissible evidence the State breached its duty of care in maintaining the machine. It found the proper maintenance of exercise equipment is beyond the knowledge of a layperson and Seymour was required to offer relevant expert testimony as to the standard of care. Pointing to Seymour's potential expert's investigation report, the court concluded there was no evidence beyond mere speculation as to the proper maintenance of the exercise equipment. Seymour appeals.

## STANDARD OF REVIEW

¶9    We review a grant of summary judgment de novo and apply the same method of evaluation as the district court pursuant to M. R. Civ. P. 56. *Buckley v. W. Mont. Cmty. Mental Health Ctr.*, 2021 MT 82, ¶ 12, 403 Mont. 524, 485 P.3d 1211. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). The moving party has the burden of establishing an absence of genuine issues of material fact. *Buckley*, ¶ 12.

¶10    Issues of negligence are generally not susceptible to summary judgment and are better determined at trial. *Hagen v. Dow Chem. Co.*, 261 Mont. 487, 492, 863 P.2d 413, 416 (1993). However, summary judgment is proper if a plaintiff fails to present any evidence which would establish an element material to his negligence action. *Hagen*,

4

261 Mont. at 492, 863 P.2d at 416; *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, ¶ 21, 410 Mont. 239, 518 P.3d 840.

## DISCUSSION

¶11 *Did the District Court err when it found Seymour had failed to present sufficient evidence to establish the State's standard of care?*

¶12 A negligence claim has four essential elements: (1) an applicable legal duty owed to the claimant; (2) breach of that duty; (3) causation of harm; and (4) resulting pecuniary damages. *Kostelecky*, ¶ 20; *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 312–13, 950 P.2d 748, 750–51 (1997) (same for negligence-premises liability). "To determine if a defendant breached a duty of care, a plaintiff must establish the standard of care by which to measure the defendant's actions; in other words, she must establish the degree of prudence, attention, and caution the defendant must exercise in fulfilling that duty of care." *Dubiel v. Mont. DOT*, 2012 MT 35, ¶ 14, 364 Mont. 175, 272 P.3d 66. Expert testimony is required when the issue is sufficiently beyond the common experience of the trier of fact that expert testimony would assist the trier in determining the issue. *Dubiel*, ¶ 17. As a plaintiff's failure to make a showing on any one element of negligence is sufficient to support summary judgment, *Kostelecky*, ¶ 21, we need not discuss other contested elements, such as harm.

¶13 Seymour argues an expert is not necessary to help the jury determine the State's standard of care or whether it breached that standard on the day of his accident. He argues the weight room injury and equipment maintenance is not beyond the experience of an ordinary juror, similar to a slip and fall case. He asserts the State owed him a duty "to

follow manufacturers guidelines and industry standards to inspect the equipment and maintain it in a safe condition along with the necessary supporting records of inspection, maintenance, and repair" and staffing. The State disputes Seymour's theory, but points out Seymour never disputed the necessity of an expert in the District Court. Only on appeal has Seymour now argued no expert testimony is necessary to establish duty and breach.

¶14 The State is correct that Seymour presents a new argument on appeal than what he presented to the District Court. "It is well established that a party may not raise new arguments or change its legal theory on appeal." *State v. Ferguson*, 2005 MT 343, ¶ 38, 330 Mont. 103, 126 P.3d 463. It would otherwise be fundamentally unfair to fault the district court for failing to rule on an issue it was never asked to consider. *Smith v. State*, 2024 MT 225, ¶ 21, 418 Mont. 210, 557 P.3d 55.

¶15 Throughout the proceedings at the District Court, Seymour maintained he would present an expert to testify regarding the State's standard of care, the breach of that duty, and that the breach caused his injuries. In his response to the State's motion for summary judgment, Seymour asserted he had written to both of his disclosed experts and anticipated they would testify at trial. We thus decline to address Seymour's argument that an expert was not required to testify as to the State's standard of care. Because of the procedural posture of this case, we assume—without deciding—that an expert was necessary to inform the trier of fact of the State's standard of care in inspecting and maintaining the machine.

¶16 Seymour cites to the report prepared by Smiltneek to discuss the State's standard of care. Assuming it is admissible, the State argued Smiltneek is not a proper expert to testify regarding the State's standard of care in inspecting and maintaining the machine.

6

Smiltneek's report apparently indicates the State's standard of care was to follow the manufacturer's "suggested daily inspection schedule" to look for and replace damaged cables. Seymour asserts the State breached its duty of care because it admittedly did not closely inspect the cables daily for damage.

¶17 We recognize Seymour analogizes this case to common slip-and-fall negligence scenarios, arguing that an ordinary juror could understand the need for regular equipment inspection. However, based on the record before us and Seymour's preserved arguments, the inspection and maintenance required of specialized gym equipment involved in this case include technical considerations—such as understanding equipment failure modes, internal cable wear, fatigue patterns, and recommended inspection intervals—that are beyond the common knowledge of lay jurors. Unlike the simple maintenance issues commonly associated with slip-and-fall cases, here, determining the reasonableness of the State's actions requires technical knowledge typically provided by qualified expert testimony. *See Dubiel*, ¶¶ 14–17.

¶18 Seymour's argument is similar to *Dubiel*. There, the plaintiff argued the defendant's own policies and procedures set forth the appropriate standard of care. *Dubiel*, ¶ 6. The issue there was whether an expert was necessary, which is not at issue here as discussed above. However, with or without an expert, it is clear mere reference to the guidelines would not have been sufficient to establish the standard of care in *Dubiel*.

¶19 Similarly here, with or without Smiltneek, mere reference to the manufacturer's suggested maintenance schedule does not establish the standard of care for the State. *See Horn v. St. Peter's Hosp.*, 2017 MT 298, ¶¶ 25–26, 389 Mont. 449, 406 P.3d 932 ("A

7

manufacturer's recommendation or package insert can be relevant evidence to be considered by the jury, but it is not a substitute for the required expert evidence that describes the standard of care."); *accord Dubiel*, ¶ 18 ("While [the manufacturer's suggested] policies and procedures present some general guidelines, they are not sufficient, standing alone, to adequately inform a jury of [the State's] standard of care and whether it met that standard on the [day of Seymour's accident]."). Neither Smiltneek nor Seymour have any expertise in operating or owning a gym or maintaining gym equipment. Seymour did not present any evidence regarding the State's standard of care—an essential element of his negligence claims. The District Court did not err in granting summary judgment for the State.

¶20 Moreover, Seymour argues in his reply brief that it was an abuse of discretion to treat Seymour so harshly by dismissing his case for the mere procedural error of failing to submit an affidavit with the expert report, which is outside the knowledge of even some attorneys. As discussed above, Smiltneek was not a proper expert to establish the State's standard of care and Seymour provided no other evidence on this element. Nevertheless, the District Court repeatedly gave wide latitude to Seymour and did not abuse its discretion in dismissing the case after Seymour had repeatedly failed to comply with deadlines and to prosecute his case for over a year. Seymour not only failed to produce a relevant expert on the issue of the standard of care, he also failed to make his expert available for deposition, M. R. Civ. P. 26(b)(4)(A)(ii), and testified under oath in his deposition that he had had no contact with his expert since his attorney had withdrawn more than a year earlier and did not intend to call his expert as a witness at that time. "While pro se litigants may

8

be given a certain amount of latitude, that latitude cannot be so wide as to prejudice the other party, and it is reasonable to expect all litigants, including those acting pro se, to adhere to procedural rules." *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124.

¶21 We acknowledge Seymour's pro se status but reiterate that his repeated delays in discovery, failure to produce a testifying expert, and neglect to facilitate deposition testimony prejudiced the State's ability to prepare an adequate defense. Compliance with procedural rules is necessary to ensure fairness to all parties and maintain judicial efficiency. *Greenup*, ¶ 15.

## CONCLUSION

¶22 The District Court did not err in granting summary judgment for the State when Seymour had failed to present any evidence of the State's standard of care.

¶23 Affirmed.

/S/ CORY J. SWANSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON

9